**United States Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANK SPACONE, on behalf of and as Trustee for the General Unsecured Creditors' Liquidating Trust of At Home Corporation, and on behalf of and in the name of the At Home Liquidating Trust of At Home Corporation, | No. C 03-4739 CW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

                Plaintiff,

        v.

MICROSOFT CORPORATION,

                Defendant/Counterclaim
                Plaintiff,

        v.

HANK SPACONE, on behalf of and as
Trustee for the General Unsecured
Creditors' Liquidating Trust of At
Home Corporation, and on behalf of and
in the name of the At Home Liquidating
Trust of At Home Corporation, and
JACQUELYN CRAWFORD, as Trustee for the
At Home Liquidating Trust of At Home
Corporation,

                Counterclaim Defendants.

_____/

1    Plaintiff and Counter-defendant Hank Spacone, on behalf of and

2    as Trustee for the General Unsecured Creditors' Liquidating Trust

3    of At Home Corporation, and on behalf of and in the name of the At

4    Home Liquidating Trust of At Home Corporation, moves for partial

5    summary judgment that Defendant and Counter-claimant Microsoft

6    Corporation infringes various claims of the patent-in-suit, that

7    claim 8 of the patent is valid and that Defendant's theories of

8    invalidity under §§ 101 and 112 and laches fail, as a matter of

9    law.  Defendant opposes the motion, and cross moves for summary

10   judgment of non-infringement of all asserted claims and invalidity

11   of all claims except claim 8.[1]  The matter was heard on January 13,

12   2006.  Having considered all of the papers filed by the parties,

13   the evidence cited therein and oral argument on the motion, the

14   Court grants in part Plaintiff's motion for partial summary

15   judgment and denies it in part and grants Defendant's motion for

16   summary judgment.

17                          BACKGROUND

18   At Home Corporation (At Home) was an internet service provider

19   that provided high-speed internet connections through cable

20   infrastructure.  On September 19, 2000, At Home was issued U.S.

21   Patent No. 6,122,647 (the '647 patent), entitled "Dynamic

22   Generation of Contextual Links in Hypertext Documents."  The

23   application corresponding to the '647 patent was filed on May 19,

_____

25       [1]Defendant notes, however, that it does not oppose the
     portions of Plaintiff's motion directed to Defendant's affirmative
26   defenses based on 35 U.S.C. §§ 101 and 112 and laches, and that it
     does not intend to pursue those defenses.  Therefore, the Court
27   will grant Plaintiff's motion with respect to those defenses.

28                                  2

United States District Court
For the Northern District of California

1998.

The Background of the patent represents as follows.  The World Wide Web is today's most commonly used information retrieval system, and one of the distinguishing features of documents on the web is the use of hypertext links that associate a portion of one document with another document.  '647 patent, 1:13-16.  In conventional hypertext documents, links were statically defined and when a user accessed the source document, the links were provided exactly as defined by the creator/editor.  This had several drawbacks, including that a link could only refer to documents that existed at the time the link was defined; after the source document and its links were defined, it could be immediately out-of-date.  '647 patent, 1:55-59.  There were, however, systems, such as search engines, that could automatically generate hypertext links.  But even those more advanced search systems were limited in their capabilities and were not dynamic in nature.  Once a user accessed a referenced document in the search result, the search engine was then incapable of providing any analysis of the referenced document.  '647 patent, 2:21-30.

The '647 patent teaches how to overcome the limitations of conventional information retrieval systems "by providing a system and method that dynamically generates contextual hypertext links in a source document to other topically relevant documents in response to the content of the source document or user-selected portion thereof."  '647 patent, 41-48.  The patent enables users to see only those documents that are relevant to their subject of interest in the current context, rather than all documents related to the

current document they are accessing or the terms it contains, and to navigate through documents based on topical subjects, rather than by the terms that occur in the documents. Furthermore, the patented technology automatically ensures that target documents are live and current, not static or stale.

Defendant develops, sells and produces computer software with smart tag functionality that Plaintiff alleges infringes the '647 patent. Smart tags are a feature of Word, Excel and PowerPoint 2003; smart tags are capable of recognizing data types including names, dates, times, addresses, places, telephone numbers, recent e-mail recipients and financial symbols. Higashiyama Dec., ¶ 2, 4. A number of smart tag recognizers are provided "out of the box" in Word. Id. at ¶ 4. Other of Defendant's programs, Microsoft Outlook, Internet Explorer and Access 2003, do not recognize text, but they do permit smart tag actions for previously recognized text. Id. at ¶ 2.

Smart tags operate through a combination of two components: recognizers and action handlers. Id. at ¶ 4. The action handlers allow users to choose appropriate actions for specific data types, such as place data or name data.

A user does not have to prompt the system or select any text for smart tag recognition to occur. When a smart tag data type is recognized in Word or PowerPoint, it is underlined with a purple dotted line; when it is recognized in Excel, a small purple triangle is placed in the corner of the spreadsheet cell. The position of a smart tag and its data type are recorded in the Word, Excel or PowerPoint document. Id. at ¶ 6.

4

At the time of recognition, the smart tag or its data type is not linked to or associated with any other entity or document.  Id. at ¶ 7.  After recognition, nothing happens unless the user decides to invoke the action handler.  Id. at ¶ 8.  The action handler controls the actions allowed for each smart tag data type.  If the cursor is positioned over the underlined text or purple triangle, or if the smart tag text is selected, a smart tag icon will appear. If the user clicks on this icon, an action handler is invoked and displays a menu which lists possible actions for that data type. Each data type has its own pre-determined group of actions to choose from; the user can select an action by clicking on a menu item and the action will then be carried out.  Id. at ¶ 9.  The financial symbol and address smart tags are the two data types provided by Defendant out of the box that allow the user to search for and access external information.  Id. at ¶ 5.  A financial symbol, or stock ticker, smart tag can search for and access information related to a stock price, company report or company news; an address smart tag can search for and access information in the form of a map or directions.  Id.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

5

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. at 323.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a <u>prima facie</u> showing in support of its position on that issue.  <u>See UA Local 343 v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. <u>See id.</u>; <u>see also Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's <u>prima facie</u> case.  <u>See UA Local 343</u>, 48 F.3d at 1471.  The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible."  <u>Id.</u>  This standard does not change merely because resolution of the relevant issue is "highly fact specific."  <u>See id.</u>

DISCUSSION

I.  Infringement

As the Federal Circuit states, "An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present,

7

either literally or by a substantial equivalent, in the accused device."  Johnson Worldwide Assoc., Inc. v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999).  The Court has already completed the first step and only the second step remains.

A.  Smart Tags

Before the Court can examine whether smart tags infringe, the Court must first determine which smart tag types are at issue. Defendant contends that Plaintiff addresses only the stock ticker smart tag in Microsoft Word 2002 and 2003.  It argues that, because Plaintiff never identified the stock ticker smart tag in his Final Infringement Contentions, the Court should not allow Plaintiff to pursue the stock ticker claim.  In the alternative, Defendant argues that Plaintiff has provided no analysis of the other smart tag types, such as telephone number, date, person and place, which do not have the same functionality as the stock ticker smart tag; thus, Defendant contends that it is entitled to summary judgment that these other smart tag types do not infringe.  In a footnote in his reply, Plaintiff responds that these arguments are nonsense; he addresses them in his opposition to Defendant's motion to strike.

Defendant's argument that Plaintiff cannot bring a claim based on the stock ticker smart tag merely because it was not identified in Plaintiff's final infringement contentions is not persuasive. The cases Defendant cites are distinguishable.  And, as Plaintiff notes, the stock ticker smart tag is an example of the alleged infringing activity; it did not need to be specifically listed on Plaintiff's final infringement contentions.

Defendant's argument that Plaintiff has failed to meet his

United States District Court

For the Northern District of California

burden with other smart tag types, however, is compelling.
Plaintiff did not need to list and analyze every type of smart tag
in his final infringement contentions.  But to defeat this motion
for summary judgment, in which Defendant contends that there is an
absence of evidence to support infringement by any smart tags other
than the stock ticker smart tags found in Word, Plaintiff must
produce specific evidence regarding every smart tag type.
Plaintiff does not.  Plaintiff provides evidence regarding
third-party smart tags and smart tags in other applications, such
as Excel and PowerPoint; however, Plaintiff does not provide
evidence regarding other smart tag types.  Directly referring to
smart tag types is not enough.  As noted above, Defendant includes
a declaration stating that the stock ticker and address smart tags
are the only two smart tag types provided by Defendant out of the
box that can search for and access external information.  The
telephone number smart tag, for example, only gives the user the
option of adding that telephone number to Outlook Contacts; it does
not access the Internet.  Plaintiff provides no evidence to create
a dispute that the other smart tag types, like the name and date,
have the same functions as the stock ticker and address smart tags.
Thus, the Court concludes that only the stock ticker, address and
third-party smart tags remain at issue in this case, and, using the
stock ticker tag as the example,[2] the Court will consider whether
these smart tag types infringe the '647 patent.

---

[2]Plaintiff's evidence regarding third-party smart tags does
not show that these tags operate any differently than the stock
ticker tag.  See Soffer Dec. ¶¶ 16, 27-31.

B.   Literal Infringement

The parties cross-move for summary judgment on literal infringement, both asserting that there are no material factual disputes.  Plaintiff claims that Defendant's smart tags functionality, which consists of the smart tags features in Defendant's Office and Windows products, and the related software modules, program and tools that support its functionality, is indistinguishable from the '647 patent and thus literally infringes the '647 patent.  But Defendant contends that its smart tags feature takes an approach to accessing information that is entirely different from that of the '647 patent and thus it does not infringe any of the asserted claims.

1.   Hypertext Links (Claims 1, 2, 6, 8, 11, 12 and 13)

All of the asserted claims require a hypertext link.[3]  The Court defined hypertext link as "a computer implemented association between a portion of the source document and a target document that includes an anchor and information sufficient to get to a network location of the target document, and allows a user to navigate from the source document to the target document by activation of the link anchor and thereby retrieve the target document."

Plaintiff argues that Microsoft's own literature indicates that smart tags generate hyperlinks.  For example, PressPass, an online resource providing information for journalists, titled "Office XP Adds New Tools and Innovations to Foundation of Past Versions," states:

---

[3] "Hypertext link," "link" and "hyperlink" are synonymous and are used interchangeably.

10

United States District Court

For the Northern District of California

1

> Smart tags work like automatic hyperlinks with multiple
> options.  They search and offer direct access to Web
> sites, personal notes and other documents that expand on
> the information on the user's screen.  For example, if a
> user types one of thousands of company stock-ticker
> names, Word creates a tag with links to a variety of
> information, such as company reports, stock information
> or news from MSN Money Central.  Smart tags provide more
> power than simple hyperlinks.

Soffer Dec., Ex. Q at MSM 14540.  And Defendant's tutorial on how

to create an XML list description explains:

> Test out the smart tag list . . . . One of the action
> options in the list should be "View A. Datum Website".
> Click this command to go to the hypothetical Web site.
> The other action option should be "A. Datum Corporation
> Company Reports", which is also a hyperlink.

Soffer Dec., Ex. B at 10522.

Defendant responds that there is no evidence that it uses

hyperlinks as defined by the Court and that smart tags do not have

a hyperlink as defined by the Court.  Defendant argues that

Plaintiff's characterization of the menu action items as the

hyperlinks fails because these menu items do not include an

"anchor," as required by the Court's claim construction.

Plaintiff, however, responds that he did not assert that the menu

action items are hypertext links.  Plaintiff points to deposition

testimony of his expert Stuart B. Soffer, who, when asked if he was

equating, for the purposes of claim 6, the action items with

hypertext links, responded, "No.  They are representative of the

hypertext links . . . ."  Supp. Smith Dec., Ex. A at 117:21-24;

119:3-6 (menus items are "simplified titles" for hypertext links).

Plaintiff does not attempt to reconcile this testimony with Mr.

Soffer's testimony that, in the stock ticker smart tag, the

hypertext links that are presented to the user are "going to be the

11

three actions" in the menu.  Bush Dec., Ex. B. at 169:3-5.

Instead, Plaintiff notes that his position that menu items are

representative of the hypertext links is consistent with the '647

patent specification, which states,

> If there is more than one link for the tag, then a menu
> of links to target documents is created at the link
> anchor.  In this implementation, dynamic HMTL (DHTML) is
> used to create the menu of links, with each link being
> named by a simplified title.

'647 patent at 10:28-32.

But the problem with this position is that, although Plaintiff

states that smart tags functionality generates hyperlinks as

construed by the Court, Plaintiff fails to identify in his briefs

what in smart tags technology is the alleged hypertext link.  Nor

was Plaintiff able adequately to identify at the hearing what in

smart tags is the hypertext link; instead, Plaintiff listed several

elements that create an "effective hyperlink."  Furthermore, as

Defendant notes, Plaintiff's position cannot be reconciled with his

allegation that smart tags infringe claim 6, which expressly

requires a menu of hypertext links, and for which Plaintiff points

to the menu of action items.  See Bush Dec., Ex. A at 11 (Claim

Chart).  Plaintiff has the burden of providing evidence to dispute

Defendant's contention that smart tags lack hyperlinks as construed

by the Court.  He cannot, and does not, meet his burden by merely

stating that the menu items represent hypertext links.  Therefore,

the Court grants Defendant summary judgment that its smart tags do

not literally infringe claims 1, 2, 6, 8, 11, 12 and 13 of the '647

patent.

United States District Court

For the Northern District of California

1              2.    Topics (Claims 2, 8, 12 and 13)

2          Claims 2, 8, 12 and 13 require determining at least one topic

3    associated with each selected term.  Plaintiff's final infringement

4    contentions provide, "Recognized text is tagged as being associated

5    with data type, i.e., topic, to thereby determine topics in the

6    knowledge base associated with the selected terms relevant to the

7    user selected portion."  Plaintiff's opening brief, however,

8    provides, "While the type information itself is not necessarily a

9    topic, it is indicative of a topic."  Defendant argues that

10   Plaintiff abandoned his theory that a data type is a topic and

11   adopted new theories of infringement, violating the Patent Local

12   Rules because the new theories were not disclosed in Plaintiff's

13   infringement contentions, and thus the Court should not consider

14   them.  See Integrated Circuit Systems, Inc. v. Realtek

15   Semiconductor Co., Ltd., 308 F. Supp. 2d 1106, 1107 (N.D. Cal.

16   2004) (quoting Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL

17   775115 at 2-3 (N.D. Cal. Nov. 5, 1998)) ("The patent local rules

18   were adopted by this district in order to give claim charts more

19   'bite.'  The rules are designed to require parties to crystallize

20   their theories of the case early in the litigation and to adhere to

21   those theories once they have been disclosed. . . . Unlike the

22   liberal policy for amending pleadings, the philosophy behind

23   amending claim charts is decidedly conservative, and designed to

24   prevent the 'shifting sands' approach to claim construction [and]

25   ensure that litigants put all their cards on the table up front.").

26   In his reply, Plaintiff does not respond to Defendant's request

27   that the Court hold him to the theory he advanced in his final

28                                   13

United States District Court

For the Northern District of California

infringement contentions.  Regardless, the Court will address Plaintiff's new theories of infringement.

In his motion for summary judgment, Plaintiff identifies the words "Microsoft Corporation," as a "topic."  Defendant argues that, because the words Microsoft Corporation are not stored in the smart tag infrastructure, smart tags cannot determine topics, as required by the patent.  Plaintiff does not dispute that the words Microsoft Corporation are not stored in the smart tags infrastructure.  Rather, Plaintiff asserts that a topic can be represented by a "topic ID," such as, in this example, "MSFT," which Plaintiff states "is exactly what Smart Tags Functionality does."  See '647 patent at 5:60-62 ("Each topic in the knowledge base 120 may have a unique topic ID code for cross-referencing in other tables.").  But, as Defendant notes, Plaintiff provides no evidence in support of this assertion; Plaintiff's statement that this "is exactly what smart tag functionality does" is unsupported by any citation to the record.  This "topic ID" theory is not found in Plaintiff's final infringement contentions; nor does Plaintiff point to any mention of it in Plaintiff's expert reports.  The claim language requires topics and not topic ID codes; topics and topic ID codes are not synonymous.

Plaintiff again fails to meet his burden of providing specific evidence to show that a dispute exists.  Thus, for this additional reason, the Court grants Defendant summary judgment that its smart tags do not literally infringe claims 2, 8, 12 and 13 of the '647 patent.

3.   Presentation and Tagging Modules (Claim 8)

Claim 8 requires three separate modules: a knowledge base, a tagging module and a presentation module.  In its claim construction order, the Court defined presentation module as:

> A software product stored on computer readable media and executable by a computer that is connected to exchange information with the knowledge base, and that is operative to receive the user selected portion of the source document and the selected terms determined by the tagging module, and for each selected term, (1) determines the topics associated with the term, and the at least one document associated with each topic, (2) creates hypertext links to the at least one document associated with the topics, (3) associates the hypertext links with the source document, and (4) presents hypertext links to the user interface.

W. Bruce Croft, Defendant's expert, explains that, under claim 8, the tagging module must "receive a user selected portion of the source document," and the presentation module must be "operative to receive the user selected portion of the source document."  According to Dr. Croft, smart tags do not meet this limitation because there is no portion of the smart tags source code that receives "any user selected portion" twice.  Croft Dec., Ex. A at ¶ 77.  Defendant argues that Plaintiff fails to offer any evidence that the smart tag functions are "operative to receive the user selected portion of the source document," as required by claim 8.

Plaintiff responds that there is nothing in the claim or the Court's construction requiring that the receipt of a user selected portion by the tagging and presentation modules be accomplished in two separate steps or by two different pieces of software code.  That is incorrect.  As Defendant notes,

15

claim 8 requires two separate modules: the tagging module "receiv[es] a user selected portion of the source document," and the presentation module "receive[s] the user selected portion." In <u>Process Control Corp. v. HydReclaim Corp.</u>, 190 F.3d 1350, 1356 (Fed. Cir. 1999), the court explained, "It is clear from the language of the claim itself that the term 'a discharge rate' in clause [b] is referring to the same rate as the term 'the discharge rate' in clause [d]." Here, it is also clear that the "the user selected portion" that the presentation model receives is the same user selected portion that the tagging module receives. The claim does not, as Plaintiff contends, need to say "first" and "second." Defendant correctly notes that the case Plaintiff cites does not hold that a claim must use the terms "first" and "second" to distinguish between multiple instances of the same limitation; instead, the case addressed whether the terms "first pattern" and "second patten" impose a serial or temporal limitation on when the patterns are created. <u>See 3M Innovative Props. Co. v. Avery Dennison Corp.</u>, 350 F.3d 1365, 1371 (Fed. Cir. 2003).

Plaintiff fails to provide evidence that both the tagging module and the presentation module receive the user selected portion. "Made available to" is not the same as "received by." Thus, for this additional reason, the Court finds that Defendant does not literally infringe claim 8.

B.   Doctrine of Equivalents

Defendant asserts that, in addition to summary judgment of

16

United States District Court

For the Northern District of California

1    no literal infringement, it is entitled to summary judgment of

2    no infringement by the doctrine of equivalents.  According to

3    Defendant, Plaintiff has offered only conclusory statements,

4    and no evidence, that smart tags infringe any of the asserted

5    claims under the doctrine of equivalents.  <u>See</u> Croft Dec., Ex.

6    A ¶ 96, 97.  Plaintiff contends that, while he did not move for

7    summary judgment under the doctrine of equivalents and thus did

8    not present evidence in his moving papers, he has presented

9    evidence; he cites to six paragraphs in Mr. Soffer's expert

10   report and two paragraphs in his supplemental declaration.[4]

11

12       [4]Defendant moves to strike these two paragraph in its Motion
     to Strike Mr. Soffer's Untimely New Opinions Regarding the Doctrine
13   of Equivalents.  Responding to Defendant's argument, discussed
     above, that claim 8 requires the user selected portion to be
14   received by both the tagging module and the presentation module,
     Mr. Soffer, for the first time, explains how claim 8 is infringed
15   by smart tags under the doctrine of equivalents.  Plaintiff argues
     that Defendant's motion to strike should be denied because Mr.
16   Soffer presents no new theory of infringement and Defendant would
     not be prejudiced by its consideration.  Plaintiff's argument that
17   Defendant would not be prejudiced is persuasive.  And Defendant
     does not dispute that it would be not prejudiced by the
18   introduction of these two paragraphs.  But Plaintiff's argument
     that this is not a new theory is not persuasive.  Although the
19   evidence Mr. Soffer relies on was disclosed in the expert report,
     the theory that claim 8 is infringed under the doctrine of
20   equivalents was not disclosed.  Plaintiff stated in his Final
     Infringement Contentions and expert report that if the smart tags
21   do not literally infringe then they infringe under the doctrine of
     equivalents; claim 8, however, was not specifically mentioned.
22   Plaintiff's argument that he could not have asserted this theory of
     infringement before because he did not know that Defendant believed
23   that claim 8 requires that the user selected portion be received
     twice is not compelling.  Nonetheless, reviewing the five factors
24   the Ninth Circuit has instructed a district court to consider in
     determining whether a discovery sanction is appropriate, the Court
25   DENIES Defendant's Motion to Strike (Docket No. 225).  <u>See</u> <u>Wendt v.</u>
     <u>Host Intern., Inc</u>., 125 F.3d 806, 814 (9th Cir. 1997) ((1) the
26   public's interest in expeditious resolution of litigation; 2) the
     court's need to manage its docket; 3) the risk of prejudice to the
27   parties; 4) the public policy favoring disposition of cases on
     their merits; 5) the availability of less drastic sanctions)).

28                                   17

United States District Court

For the Northern District of California

Paragraphs forty to forty-four in the expert report, however, make no mention of equivalents.  And paragraph 101 contains only a conclusory catch-all statement:

> In addition, if for any reason a claim limitation or element of the '647 patent claims identified above are found to not be literally infringed by Smart Tags functionality, I conclude there is infringement under the Doctrine of Equivalents.  In particular, based on my analysis, any aspect of Smart Tags functionality not found to be literally within the scope of a particular claim limitation or element is merely an insubstantial change and that Smart Tags functionality includes corresponding elements that perform substantially the same function, in substantially the same way, to achieve substantially the same result as the elements in claim 1, 2, 6, 8, 11, 12 and 13.

Soffer Dec. ¶ 104.

Apart from the two paragraphs in Mr. Soffer's Supplemental Declaration, paragraph forty-five in the expert report is Plaintiff's only attempt to address a specific limitation:

> Finally, even were it determined that Smart Tags functionality does not literally generate "hyperlinks", Smart Tags functionality generates the equivalent of "hyperlinks".  Smart Tags functionality performs substantially the same function (associating a target document with a source document for document navigation and retrieval), in substantially the same way (invoking a routine for document navigation and retrieval), to achieve substantially the same result (navigating to and retrieving a target document from the source document). Any difference is insubstantial.

Id. at 45.  Defendant asserts that this "analysis by parenthetical" is not enough for Plaintiff to meet his burden.

As the Federal Circuit has held, "Having presented the district court with only conclusory statements regarding equivalence, without any particularized evidence and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device," the

18

United States District Court

For the Northern District of California

1  plaintiff is "foreclosed from invoking the substantive

2  application of the doctrine of equivalents."  PC Connector

3  Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed.

4  Cir. 2005); see also General Elec. Co. v. Nintendo Co., Ltd.,

5  179 F.3d 1350, 1359 (Fed. Cir. 1999) (affirming summary

6  judgment because "conclusory assertion of equivalence" was

7  "insufficient to establish a genuine issue of material fact"

8  and the plaintiff therefore failed to carry its burden).

9      In his opposition to Defendant's motion to strike the two

10  paragraphs from Mr. Soffer's supplemental declaration,

11  Plaintiff acknowledges that he has not presented detailed

12  doctrine of equivalents analyses for each asserted claim of the

13  '647 patent.  Nonetheless, the Court determines that paragraph

14  45 and Mr. Soffer's supplemental declaration provide

15  evidentiary support, although minimal, for infringement under

16  the doctrine of equivalents, but only with respect to

17  hyperlinks in all of the asserted claims and the tagging and

18  presentation models of claim 8.  Plaintiff does not provide

19  evidence of an equivalent of topics.  Therefore, there is no

20  infringement, even under the doctrine of equivalents, of claims

21  2, 8, 12 and 13.  The Court grants summary judgment to

22  Defendant of non-infringement, literally or by equivalents, of

23  claims 2, 8, 12 and 13.  A dispute of fact remains in respect

24  to infringement by equivalents of the hyperlinks limitation in

25  claims 1, 6 and 11.  However, as will be discussed below,

26  summary judgment is granted to Defendant on these claims as

27  well because they are invalid as anticipated.

28                              19

1    II.   Validity

2         Defendant argues that, as a matter of law, all of the

3    asserted claims, except claim 8, are invalid as anticipated.

4    See 35 U.S.C. § 102 (providing that a patent is invalid if the

5    invention disclosed was fully anticipated by a prior art

6    reference).  Plaintiff argues that, as a matter of law, claim 8

7    is valid, neither anticipated nor obvious.

8         A patent is presumed to be valid.  35 U.S.C. § 282.  A

9    party alleging that a patent is invalid bears the burden of

10   proof, id., and must overcome this statutory presumption of

11   validity by proving invalidity through clear and convincing

12   evidence.  Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.,

13   204 F.3d 1360, 1367 (Fed. Cir. 2000).

14        A.   Anticipation

15        Defendant contends that claims 1, 2, 6, 11, 12 and 13 are

16   anticipated by U.S. Patent No. 5,815,830 (Anthony) and an

17   article by Paul Thistlewaite.  Plaintiff contends that, as a

18   matter of law, Defendant does not and cannot provide clear and

19   convincing evidence that claim 8 is anticipated by any prior

20   reference.  Because the Court found that, even under the

21   doctrine of equivalents, claims 2, 8, 12 and 13 were not

22   infringed, the Court considers only claims 1, 6 and 11.  See

23   Phonometrics, Inc. v. N. Telecom Inc., 133 F.3d 1459, 1468

24   (Fed. Cir. 1998) (district court has discretion to dismiss as

25   moot a counterclaim alleging that a patent is invalid where it

26   finds no infringement).

27

28                                  20

United States District Court

For the Northern District of California

1    1. Legal Standard

2  "A patent is invalid for anticipation when the same device

3 or method, having all of the elements contained in the claim

4 limitations, is described in single prior art reference."

5 Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367,

6 1375 (Fed. Cir. 2002); see also Scripps Clinic & Research Fdn.

7 v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991)

8 ("Invalidity for anticipation requires that all of the elements

9 and limitations of the claim are found within a single prior

10 art reference."). "An anticipating reference must describe the

11 patented subject matter with sufficient clarity and detail to

12 establish that the subject matter existed in the prior art and

13 that such existence would be recognized by persons of ordinary

14 skill in the field of invention." Crown Operations, 289 F.3d

15 at 1375. "The question of what a reference teaches and whether

16 it describes every element of a claim is a question for the

17 finder of fact." Med. Instrumentation & Diagnostics Corp. v.

18 Elekta AB, 344 F.3d 1205, 1221 (Fed. Cir. 2003).

19    2. Description of Prior Art

20     a. Anthony

21  Andre Charles Anthony filed his patent application on

22 December 18, 1995; the patent, entitled "Automatic Generation

23 of Hypertext Links to Multimedia Topic Objects" issued on

24 September 29, 1998. Kirk Dec., Ex. A. Anthony is prior art to

25 the '647 patent under 35 U.S.C. § 102(e).

26  The patented technology in Anthony relates to methods and

27 systems of information management and, more specifically, to

28         21

United States District Court

For the Northern District of California

hypertext information retrieval and display.  Id. at 1:5-8.
The object of the patented technology was to provide a method
of arranging and retrieving data in a computer which did not
require a time-consuming authoring process.  The patented
technology provides a structure for cross-referencing text
which does not require manual authoring of cross-reference
links, and therefore reduces the time and effort required to
produce and maintain hypertext documents.  The patented
technology further eliminated the need for the author to
identify a word or phrase in which to embed codes to indicate
the existence of a cross reference, or to specify instructions
for navigation to the referred text.  Id. at 3:16-25.  Because
the text stored is compared, and associated, with topic names
at the moment of display, the links between text portions are
always up to date.  Id. at 3:47-50.  The patented technology
provides links, "meaning that the word or phrase in the text
found to be a match with a topic name is highlighted on the
display, and linked to the topic to which the topic name
refers."  Id. at 5:6-12.  The user can then jump to the
associated topic by selecting the highlighted word or phrase in
the first topic text.

          b.  Thistlewaite

     Paul Thistlewaite's article, Automatic Construction and
Management of Large Open Webs, 33 Information Processing &
Management, 161-73, was published in March, 1997, and is prior
art to the '647 patent.  Kirk Dec., B.  The abstract notes that
many researchers have commented on the difficulties associated

22

United States District Court

For the Northern District of California

with manually created or maintained hyperdocument links and the consequent need for automated methods.  The article describes a system for the automatic detection and management of structural and referential links, specifically addressing the issues engendered by large volatile hyperbases.  The article concludes with a case study, describing the use of the approaches advocated in the paper to build a hyperbase of the complete electronic documents holdings of the Australian Parliament.

Although this is a single article, Plaintiff contends that it is not a single reference as required for purposes of anticipation.  According to Plaintiff, while Defendant attaches only this one article, Dr. Croft's expert report and claim chart incorporate multiple articles by this author and another author relating to this system and the Australian Parliament case study.  Defendant responds that it has made clear that it is relying on this single article, and that Dr. Croft concludes, and his invalidity claim chart shows, that each and every element of claims 1, 2, 6, 11, 12 and 13 is present in this article.  The claim chart states that the Thistlewaite article and the systems described therein anticipate the alleged claims.  There is a footnote after "systems described therein" that lists three additional references "describing this same system"; the three additional references are cited in the claim chart.  Croft Dec., Ex. D at 1, n.1.  Before their citations, however, is a "see also," indicating that these additional references only provide additional support for a proposition already supported.  The Court will consider the

23

Thistlewaite article as a single reference, without relying upon any of the additional support provided by the other references.

3.    Anticipation of Claims 1, 6 and 11

Claim 1 consists of:

A computer-implemented method of dynamically generating hypertext links from a source document to at least one document other than the source document, comprising:
    receiving a user selected portion of the source document;
    selecting a plurality of terms from the user selected portion; and
    for at least one selected term, automatically creating at least one hypertext link to a document, other than the source document, relevant to the term.

Claim 6 depends on claim 1 and further requires the creation of a menu of hypertext links.  Claim 11 is similar to claim 1, except that it does not require "selecting a plurality of terms from the user selected portion."

Defendant's expert concludes that these three claims are anticipated by many different works of prior art.  Croft Dec., Ex. B at 20, 33-35.  Plaintiff, however, provides no expert testimony regarding the validity of these claims.  His rebuttal expert testified only that claims 2, 3, 8, 9, 10 and 12 are valid in spite of the prior art references presented by Defendant's expert.  Plaintiff responds that his decision not to offer expert testimony on the validity of claims 1, 6 and 11 is irrelevant; he notes that there is no requirement that a plaintiff offer expert testimony about claims upon which the defendant bears the burden of demonstrating invalidity.

Plaintiff does not have to offer expert testimony, but he

24

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  does have to offer some evidence.  Although the ultimate burden

2  of proof remains on Defendant, once it comes forward with clear

3  and convincing evidence to establish invalidity, the burden of

4  production of evidence shifts to Plaintiff.  See TP Labs., Inc.

5  v. Professional Positioners, Inc., 724 F.2d 965, 971 (Fed. Cir.

6  1984) (if a prima facie case is made, "the patent owner must be

7  able to point to or must come forward with convincing evidence

8  to counter that showing").  Here, Dr. Croft's expert report and

9  claim charts provide a clear and convincing prima facie case of

10 anticipation of claims 1, 2, 6, 11, 12 and 13.  Yet, as noted

11 above, Plaintiff has no expert or other evidence to show that a

12 dispute exists with respect to claims 1, 6 and 11.  As

13 Defendant notes, "Attorney argument is no substitute for

14 evidence."  Enzo Biochem, Inc. v. Gen-Probe, Inc., 424 F.3d

15 1276, 1284 (Fed. Cir. 2005).

16     Plaintiff offers little more than attorney argument.

17 Citing Anthony, Plaintiff states that the links created in

18 Anthony are the created in the absence of any "user selected

19 portion," as required by claims 1, 6 and 11.  Defendant notes,

20 however, that Plaintiff does not address the Court's

21 construction of "user selected portion," which is "the entirety

22 or part, as chosen by the user, of a document accessed by the

23 user, wherein the user can choose the entirety of the document

24 by accessing the document."  In Anthony, the entirety of a

25 document is selected by the user and accessed from a database

26 in the first step in the system's search for relevant terms;

27

28                                    25

United States District Court

For the Northern District of California

thus, it discloses what Plaintiff claims it does not disclose. See Kirk Dec., Ex. A at 4:53-63. Plaintiff presents no other evidence. Because Plaintiff has failed to show a factual dispute, the Court grants summary judgment that claims 1, 6 and 11 are invalid as anticipated by Anthony.

With respect to Thistlewaite, Plaintiff contends that Defendant did not meet its burden of establishing a prima facie case because, in order to anticipate the '647 patent, the article must be enabling. He notes that Defendant does not provide any testimony or evidence that would demonstrate how Thistlewaite enabled one of ordinary skill in the art to practice the patented technology recited in claims 1, 6 and 11. Defendant does not claim to have provided such evidence; instead, it responds that Thistlewaite is presumptively enabling. But the case on which it relies did not hold that prior art printed publications are presumptively enabling. See Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1355 (Fed. Cir. 2003). Rather, the court noted "that by logical extension" its reasoning that the prior patent was presumptively enabled "might also apply to prior art printed publications as well, but as Sugimoto is a patent we need not and do not so decide today." Id. at 1355 n.22. Because the Court has found that claims 1, 6 and 11 are anticipated by Anthony, it need not decide whether Thistlewaite is presumptively enabling.

    B.    Obviousness

    Plaintiff contends that, as a matter of law, Defendant

26

**United States District Court**
For the Northern District of California

1    does not, and cannot, provide clear and convincing evidence

2    that claim 8 is invalid for obviousness.  Because the Court

3    found that, even under the doctrine of equivalents, claim 8 was

4    not infringed, the Court will not consider whether Defendant's

5    claim of obviousness fails as a matter of law.  See

6    Phonometrics, Inc., 133 F.3d at 1468.

7                              CONCLUSION

8         For the foregoing reasons, the Court GRANTS Defendant's

9    Motion for Summary Judgment (Docket No. 196).  The Court GRANTS

10   Defendant summary judgment that its smart tags do not literally

11   infringe the '647 patent and do not infringe claims 2, 8, 12

12   and 13 by equivalents.  Although there is a dispute of facts as

13   to whether smart tags infringe claims 1, 6 and 11 by an

14   equivalent of the hyperlinks limitation, the Court further

15   GRANTS summary judgment that claims 1, 6 and 11 are invalid as

16   anticipated by Anthony.  Because there is no infringement of

17   claims 2, 8, 12 and 13, the Court DISMISSES as moot Defendant's

18   counter-claim that these claims are invalid.  The Court GRANTS

19   IN PART Plaintiff's Motion for Partial Summary Judgment (Docket

20   No. 166) and DENIES it IN PART.[5]  The Court GRANTS Plaintiff

21   summary judgment that Defendant's theories of invalidity under

22   §§ 101 and 112 and laches fail, as a matter of law, but the

23

24        [5]In addition, the Court DENIES Defendant's Motion to Strike
     Inadmissible Evidence (Docket No. 189) and Plaintiff's Motion to
25   Strike Inadmissible Evidence (Docket No. 211).  To the extent that
     the Court relies upon evidence to which there is an objection, the
26   parties' objections are overruled.  To the extent that the Court
     does not rely on such evidence, the parties' objections are
27   overruled as moot.

28                                   27

Court DENIES Plaintiff's motion for summary judgment that Defendant infringes claims 1, 2, 6, 8, 11, 12 or 13 of the '647 patent and that claim 8 is valid as neither anticipated nor obvious.  Judgment shall enter accordingly.  Defendant shall recover its costs from Plaintiff.

IT IS SO ORDERED.

Dated: 3/10/06

_____
CLAUDIA WILKEN
United States District Judge

United States District Court

For the Northern District of California